[Cite as *State v. Carroll*, 2017-Ohio-7141.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| STATE OF OHIO | : | Hon Patricia A. Delaney, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, Jr. J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 16CA78 |
| JEREMIAH T. CARROLL | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:          Appeal from the Richland County Court of
                                 Common Pleas

JUDGMENT:                        Affirmed

DATE OF JUDGMENT ENTRY:          August 4, 2017

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

GARY BISHOP                           JOHN BOYD
Prosecuting Attorney                  1 Marion Ave, Ste 215
Richland County, Ohio                 Mansfield, Ohio 44903

By: JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Hoffman, J.,*

{¶1} Defendant-appellant Jeremiah T. Carroll appeals his convictions and sentence entered by the Richland County Court of Common Pleas on two counts of having weapons under disability, in violation of R.C. 2923.13(A)(2), felonies of the third degree, following a jury trial. Plaintiff-appellee is the state of Ohio.

### STATEMENT OF THE CASE AND FACTS

{¶2} On May 5, 2016, the Richland County Grand Jury indicted Appellant on the aforementioned charges. Appellant entered a plea of not guilty to the Indictment at his arraignment on June 21, 2016. The matter proceeded to jury trial on September 29, 2016.

{¶3} Officer Denny Kiner of the Mansfield Police Department was working first shift on September 27, 2015, when he and Sergeant Stephen Brane responded to a call about a stabbing at the Motel 6 on North Trimble Road. When they arrived at the scene, the officers found Appellant sitting on the sidewalk in front of room 414. Appellant was holding his chest and advised the officers he had been stabbed by his girlfriend's father or stepfather, Tom. The officers called for medical assistance and Appellant was subsequently transported to MedCentral for treatment.

{¶4} Officer Kiner and Sergeant Brane spoke with several witnesses and confirmed an assault had occurred. Myron Carroll, Appellant's father, gave the police consent to search the motel room. Officer Kiner and Sergeant Brane entered the room and began searching for evidence. The officers observed blood splatter on the walls of the room and on the sidewalk outside the room. During their search, they discovered stolen property which was linked to a crime in the county. In addition, they located 15

grams of marijuana in a bag under the mattress, $30 cash in a blue money bag, and a crowbar.

{¶5} The officers determined Appellant was trying to get into the safe located in the motel room. A motel employee, Betty Shepard, opened the safe. Therein, Officer Kiner and Sergeant Brane located $29.33 in change; 57 grams of marijuana; some pills, which were subsequently identified as Diazepam and Alprazolam; a Smith & Wesson .357 revolver; and a Phoenix Arms Raven .25 caliber handgun as well as items which had been reported stolen by Thomas George and Tina Ransom.

{¶6} Betty Shepard, head housekeeper at the Motel 6, testified the front desk clerk called her on the morning of September 27, 2015, and asked her to come to work as soon as possible as a guest needed a room safe opened. Upon arriving, Shepard proceeded to room 414. She came around the building and heard a scuffle. Shepard noticed a white van parked in an unusual manner. She continued towards the room and observed people in room 414 fighting. Shepard instructed them to stop and warned she would call the police. A man, later identified as Appellant, ran out of the room, clenching his stomach. Appellant told Shepard he had been stabbed and instructed her to call 9-1-1. Shepard observed Appellant run towards the white van and slash the tires. After the police arrived, Shepard returned to her daily work. Later, the police asked her to open the safe, which she did.

{¶7} On September 27, 2015, Officer Shane Gess of the Mansfield Police Department was dispatched as backup for a vehicle stop. Officer Gess arrived at the specified location and observed a white utility van with two flat tires. The occupants of the van, Thomas George and Tina Ransom, appeared to be injured. George had

observable stab wounds. George and Ransom were transported to the hospital for treatment.

{¶8} Tina Ransom testified her daughter, Brittany Harris, was romantically involved with Appellant during the period which included September 26, and 27, 2015. Ransom arrived home from work at approximately 5:00 a.m. on September 27, 2015, but could not open the front door. After pushing her way in, Ransom found a kitchen chair had been placed under the doorknob. The living room was turned upside down. The only item not disturbed was the memorial to Ransom's deceased son. The dining room and kitchen had been ransacked. Ransom photographed the damage. Ransom called her boyfriend, Tom George, who owns the home with his brother and sister, and with whom Ransom lives.

{¶9} George arrived soon after and called the police. Ransom informed the police she knew her daughter was involved in the incident because her son's memorial was untouched. Ransom explained Harris knew she (Ransom) "would be very extremely upset if his memorial shelf was touched." Transcript of Proceedings, Vol. II, Sept. 30, 2016. Ransom added Harris' room was also untouched. Ransom suspected her daughter and Appellant were responsible.

{¶10} George and Ransom drove George's white van to the Motel 6, where she believed Harris would be found. Ransom observed Harris' vehicle in the parking lot. George parked the van in front of Harris' vehicle to prevent her from being able to exit. Ransom approached Appellant's father and asked Harris' whereabouts. Appellant's father stated Harris was in the motel room. When Ransom entered the room, she found Appellant and Harris sleeping with Ransom's granddaughter in between them. Ransom

recognized items which had been taken from her home and asked Harris why her things were in the motel room. Appellant jumped out of the bed and began attacking Ransom. Appellant's father joined in the assault. Ransom yelled for George. After George entered the room, Appellant and his father released Ransom and attacked George. Ransom grabbed Appellant by the neck and they fell to the floor. Ransom realized she had been stabbed in the leg. Appellant fled. Ransom retrieved her phone and a phone which she believed belonged to George. She subsequently turned both phones over to police.

**{¶11}** George and Ransom returned to their van and found the tires had been slashed. While they drove, the tires began to lose air and shred apart. George attempted to drive home, but they were stopped by police. George and Ransom were ultimately transported to the hospital for treatment of their injuries. Both sustained extensive injuries. Sometime later, a Mansfield police officer returned the phones Ransom had retrieved after the assault to her. She subsequently realized the phone belonged to Appellant not George, and turned it over to Attorney Jaceda Blazef.

**{¶12}** Dawn Fryback, a DNA analyst with the Mansfield Police Department crime lab, testified 90% of the DNA found on the Smith & Wesson .357 revolver located in the motel room belonged to Appellant. Fryback noted the remaining 10% of DNA did not belong to any other individual involved in the incident.

**{¶13}** Sergeant Steve Blust, who is assigned to the multi-county drug enforcement unit, conducted a forensic analysis on the cell phone Ransom had gathered from the motel room. Sergeant Blust determined the email account attached to the cell phone was Jeremiahcarroll42@gmail.com, and the Facebook account associated with the email belonged to "Jay Carroll".

**{¶14}** Detective Matthew Loughman was assigned to the case the Monday after the incident. He conducted a criminal computer history of all of the individuals involved. Detective Loughman confirmed Appellant was convicted in Crawford County on January 8, 2014, on one count of robbery conviction. Detective Loughman explained robbery is an offense of violence and, as a result of his conviction, Appellant was no longer legally able to own or possess a firearm.

**{¶15}** Attorney Jaceda Blazef contacted Detective Loughman regarding the cell phone Ransom had given her. Detective Loughman collected the phone on October 7, 2015, and placed it into evidence. After obtaining a search warrant, Detective Loughman arranged for Sergeant Blunt to conduct a forensic analysis of the phone. Detective Loughman testified relative to the information Sergeant Blunt extracted from the phone. The user account linked to the device was Jeremiahcarroll42@gmail.com. The Facebook account associated with the email belonged to "Jay Carroll". A review of the web history revealed, on September 27, 2015, at 7:10 a.m., the term "Safemark", which was the brand of safe in the motel room, was searched. In addition, a Google search using the term "Lost Safemark code", and a search of YouTube videos for "Hotel safe hack" were performed. At 7:31 a.m. on the same day, a search for pill identification information was conducted.

**{¶16}** Following the close of the state's evidence, Appellant made an oral Crim. R. 29 motion for acquittal, which the trial court denied.

**{¶17}** Appellant testified in his own defense. Appellant detailed the incident, recalling he was dozing on the bed in the motel room when George entered and began to attack him. Once he freed himself from George, Appellant grabbed Ransom who was

assaulting Harris.  Appellant pushed Ransom towards the door.  Meanwhile, George and Appellant's father were embroiled in a fight.  Appellant was able to get George off of his father.  As Appellant tried to move George out of the room, Ransom jumped him.  When the housekeeper informed them she was calling the police, George and Ransom exited the room.  Appellant grabbed a pocketknife and punctured the passenger tires on George's van.  An ambulance arrived before the police, and Appellant was transported to the hospital.

{¶18}  Appellant stated he did not place anything in the motel room safe.  Appellant denied owning or possessing the guns located in the safe, noting the weapons looked like ones his father owned and which he (Appellant) had not touched in at least five years.  Appellant claimed the cell phone belonged to his father, and he had used it to log onto Facebook.  Appellant denied searching for a YouTube video which demonstrated how to open a safe.  Appellant also denied visiting drug identification websites.

{¶19}  On cross-examination, the state questioned Appellant about text messages sent to and from him on the cell phone.  Appellant stated he was merely using the phone, and denied ownership.  Appellant could not explain why topless photographs of his girlfriend were on the phone, which he claimed belonged to his father.

{¶20}  After hearing all of the evidence and receiving instructions from the trial court, the jury found Appellant guilty of two counts of having weapons under disability.  The trial court sentenced Appellant to term of incarceration of three years on Count 1 with a discretionary three year period of post release control; and three years of community control on Count 2.  The trial court memorialized Appellant's convictions and sentence via Jury Verdict and Sentencing Entry filed October 3, 3016.  On October 17, 2016, the

trial court filed a Corrected Sentencing Entry Specifying Length of Prison Term Only, which clarified the prison sentence on Count 1.

{¶21} It is from the convictions and sentence Appellant appeals, raising the following assignments of error:

I. JEREMIAH CARROLL'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, SO THEY MUST BE REVERSED AND THE CASE REMANDED FOR A NEW TRIAL.

II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT PERMIT JEREMIAH CARROLL TO TESTIFY ABOUT MARIJUANA AND PILL DRUG TRANSACTIONS THAT HE OBSERVED BETWEEN HIS FATHER AND A WITNESS ENGAGE IN, WHICH WOULD HAVE EXPLAINED WHY HIS CELL PHONE, WHICH JEREMIAH CARROLL CLAIMED WAS IN HIS FATHER'S POSSESSION, WAS USED TO VISIT A DRUG IDENTIFICATION WEBSITE, WHEN THE STATE, OVER DEFENSE COUNSEL'S OBJECTIONS, WAS PERMITTED TO OFFER TESTIMONY THAT THE PHONE WAS USED TO ACCESS SAID WEBSITE, TO THE MATERIAL PREJUDICE OF JEREMIAH CARROLL.

I

{¶22} In his first assignment of error, Appellant argues his convictions were against the manifest weight of the evidence.

{¶23} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record,

weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶24}** "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

**{¶25}** Appellant was convicted of two counts of having weapons under disability, in violation of R.C. 2923.13(A)(2), which provides:

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * *

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

**{¶26}** During his testimony, Appellant acknowledged he had handled the Smith & Wesson .357 revolver found in the motel room safe more than five years earlier as the firearm belonged to his father. Appellant argues because Dawn Fryback, the DNA expert,

did not testify regarding how long DNA remains viable on an object, Appellee failed to establish he had or carried a firearm after his 2014 robbery conviction. Appellant contends the DNA found on the revolver could have been deposited prior to that conviction.

**{¶27}** Fryback testified 90% of the DNA found on the .357 revolver belonged to Appellant. Fryback added the remaining 10% of DNA did not belong to any other individual, including Appellant's father, involved in the incident. Although Fryback did not specifically state how long DNA will remain on an object, she did explain the potential impact environmental elements would have on the quality of a DNA sample as well as how skin cells transfer onto an object.

**{¶28}** The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. The jury obviously did not believe Appellant's claim he had not handled the revolver in more than five years in light of Fryback's testimony and the fact his father's DNA was not found on the firearm.

**{¶29}** Appellant further asserts his convictions were against the manifest weight of the evidence as the cell phone, which revealed internet searches on how to open a safe and pill identification, was unaccounted for for eight to ten days after the incident, and the state failed to establish ownership of the phone.

**{¶30}** We find the jury could reasonably conclude Appellant owned the phone. The email account and Facebook account associated with the device were in Appellant's name. Appellant testified he was merely using his father's phone. His father provided the police with a cell phone number different from the one associated with the phone in

evidence. Appellant could not explain why topless photographs of his girlfriend appeared on his father's phone. The jury clearly did not believe Appellant.

{¶31} Based upon the foregoing, we find Appellant's convictions were not against the manifest weight of the evidence.

{¶32} Appellant's first assignment of error is overruled.

II

{¶33} In his second assignment of error, Appellant maintains the trial court abused its discretion by prohibiting him from testifying about drug transactions he witnessed between his father and Ransom. Appellant suggests this testimony would have explained why his cell phone, which was in his father's possession, was used to search drug identification websites.[1] Appellant contends he was materially prejudiced by the trial court permitting Appellee to offer testimony the phone was used to access such websites. We disagree.

{¶34} The admission or exclusion of relevant evidence is a matter left to the sound discretion of the trial court. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Sage* (1987), 31 Ohio St.3d 173, 180.

{¶35} During his case-in-chief, Appellant took the stand in his own defense. Defense counsel questioned Appellant about Ransom. Appellant testified his father had known Ransom for a long time and he (Appellant) had seen them sell things "back and forth to each other." Tr. Vol. II at 348. Defense counsel then asked:

---

[1] It should be noted, at trial, Appellant testified the phone did not belong to him, but to his father. In his Brief to the Court, Appellant back tracks and claims the phone belonged to him, but was in his father's possession.

> Q. What kind of things would they sell back and forth?
>
> A. Pills, marijuana.
>
> MR. SIDDIQ [Prosecutor]:  Objection.
>
> TRIAL COURT:  Sustained.

*Id.*

**{¶36}** Appellant failed to proffer his desired testimony or, in any way, indicate what the testimony would have established.  Further, Appellant did not present an argument to the trial court as to why the objection should have been overruled.  As such, we find Appellant has not demonstrated prejudice as a result of the exclusion of the evidence.  Appellant testified in his own defense.  He stated the phone did not belong to him.  Because the jury clearly did not believe his testimony regarding the ownership of the phone, it is unlikely the jury would have believed his rationale for the internet search for drug identification websites.

**{¶37}** Based on the record presented, we find the trial court did not abuse its discretion in excluding this testimony.

**{¶38}** Appellant's second assignment of error is overruled.

{¶39} The judgment of the Richland County Court of Common Pleas is affirmed.

By: Hoffman, J.

Delaney, P.J. and

Wise, Earle, J. concur